UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      CR. NO. 26-20059

v.                                      HON. DENISE PAGE HOOD

KYLE WAGNER,

        Defendant.
_____/

## **MOTION APPEALING DENIAL OF BOND**

Defendant Kyle Wagner is currently incarcerated, pending trial, at the Milan Detention Center in Milan, Michigan.

A detention hearing was held on February 5, 2026, in the District of Minnesota, where Mr. Wagner was first arrested based on the criminal complaint in this case. Magistrate Judge David Schultz presided over a Rule 40 removal hearing during which the issues of identify, probable cause, and detention were adjudicated.

Defendant, by and through undersigned counsel, moves to appeal the denial of bond made by Judge Schultz on February 5, 2026. A brief and written proffer in support of release follows this motion.

Mr. Wagner requests that a hearing be set on the matter as soon as practicable.

                                                         Respectfully submitted,

                                                         **FEDERAL COMMUNITY DEFENDER**

1

EASTERN DISTRICT OF MICHIGAN
Attorneys for Defendant
By:
    <u>s/Jean Pierre Nogues</u>
    Jean Pierre Nogues
    Assistant Federal Defender
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 967-5840
E-mail: jp_nogues@fd.org

## **SUPPORTING BRIEF AND PROFFER**

Defendant Kyle Wagner is charged by indictment with one count of cyberstalking, in alleged violation of 18 U.S.C. § 2261A(2), and one count of communicating a threat transmitted via interstate commerce, in alleged violation of 18 U.S.C. § 875(c). The alleged victim in these two charges, J.S., was purportedly in the Eastern District of Michigan at the time of the transmission, which is why the case has been charged in this district.

However, Kyle Wagner was born in, raised in, and has lived for most of his adult life in and around Minneapolis-St. Paul, Minnesota. The communications he allegedly made over social media that are the subject of the charges were allegedly sent by him while he was in the District of Minnesota. Indeed, after the arrest warrant in this case was issued on February 3, Mr. Wagner was arrested in Minnesota on February 5 and brought before a magistrate judge in the District of Minnesota on Rule 40 removal proceedings. Apparently, the Government requested that a detention hearing be held

immediately; there is no record available at this time that indicates whether Mr. Wagner requested a continuance. Mr. Wagner apparently waived his right to a "removal hearing", but was given a detention hearing and probable cause hearing immediately after the initial appearance. (*See* Criminal Docket for USA v. Wagner, case no. 26-mj-00141-DTS (D. Minn.), docket entry no. 4, available at ECF No. 9 in the instant case).

After the detention/probable cause hearing was held, Magistrate Judge Schultz issued an Order of Detention. (*See* Order of Detention, attached as Ex. A.) In that order, Judge Schultz explained his decision to detain Mr. Wagner as follows, in relevant part:

> As for the issue of detention, the Court finds that government has met its burden to show that Mr. Wagner presents a risk of flight and a danger to the community. The Court considers the nature and circumstances of the offense and the nature and seriousness of danger posed by Mr. Wagner if he were released on bond. The Court weighs Mr. Wagner's disclosure of J.S.'s personal information and the implied threat to injure, harass or intimidate J.S. and his parents. The weight of the evidence also tends to support detention. Mr. Wagner's recorded social media posts in which he expresses his anger and frustration, and encourages his supporters to join him in obstructing, impeding, and assaulting officers and those who support the efforts of law enforcement are voluminous. As to evidence of the risk of Mr. Wagner's nonappearance in future court proceedings, the Court gives weight to Mr. Wagner's lack of job security and his admitted lack of stable housing over the last year. Additionally, in his posts on social media, Mr. Wagner expressed a desire to "evade" law enforcement. Lastly, Mr. Wagner's strong ties to Minnesota weigh in favor of detention because the criminal complaint arises in another district.

Ex. A at 3.) Based on this, the court concluded that clear and convincing evidence had established that no condition or set of condition could reasonably ensure the safety of

the community or that Mr. Wagner would appear as required at future Court proceedings in the Eastern District of Michigan. (Ex. A. at 3.)

Respectfully, the defense disagrees with the magistrate's assessment.

First, the "threat" alleged by the government was given excessive weight by the court. After all, the court itself acknowledged that the threat was no more than "implied." At no time did the defendant expressly threaten to harm or injure J.S. or anyone in his family. Nor, indeed, is there evidence that J.S. was actually emotionally distressed or reasonably felt threatened by defendant's online postings. Instead, this case is based on a theory that "doxxing"—the publishing of a person's personal or family address online—constitutes cyberstalking that would cause or be reasonably intended to cause emotional distress to the supposed victim. Per the language of Count 2, the government also proposes that calling a person "Nazi Boy" and saying "we can all knock on strangers [sic] doors…See you soon, kiddo…stay safe out there" constitutes a real implied threat of physical harm that would be perceived as such by the recipient. But the magistrate failed to address that the alleged victim in this case, J.S., is himself a notorious online provocateur who harasses and threatens anti-ICE activists and journalists who cover ICE activities with a critical eye. Indeed, Mr. Wagner's statement that "we can all knock on strangers' doors" is a reference to J.S.'s own online post of a video of himself at the door of the home of a journalist critical of

4

ICE.[1] Rather than making a threat, the defendant was calling out J.S. for threatening someone else. Also not addressed by the magistrate is that Mr. Wagner's online posting of J.S.'s parents' home address is, upon information and belief, a reposting of a prior doxxing of J.S. by another person. J.S. is, apparently, infamous in the circles of online activists who identify as anti-facist and famous among their right-wing online provocateurs. It appears highly unlikely that J.S. suffered any significant emotional distress from a reposting of a prior doxxing incident. From all indications, this sort of online trolling is what gets the guy up in the morning. As further discussed below, J.S. is no blushing lily.

Second, the magistrate was wrong in stating that the weight of the evidence supports detention. In addition to the reasons provided in the above paragraph, the defense submits that Mr. Wagner's online activities "express[ing] anger and frustration" with ICE activities in Minnesota were reasonable and appropriate, and that while he may indeed have "encouraged his supporters to join him in obstructing [and] impeding" ICE operations in Minnesota, at no time did he encourage the "assault[] of officers and those who support the efforts of law enforcement." The magistrate's conclusion appears to be based on the government's presentation of its 31-page criminal complaint. Notably, the complaint fails to discuss or describe the alleged offenses until page 28,

---

[1] The journalist's repost of a screenshot of J.S.'s video is available for review by the court. Due to the presumed confidentiality of an alleged victim, that screenshot will not be filed with this motion but is available for review by the court at its request.

and instead harps on Mr. Wagner's First Amendment-protected online postings excoriating ICE and telling his followers to stand their ground and to defend themselves if unlawfully attacked or assaulted by ICE officers. He encourages people able to arm themselves to do so—never suggesting it be done anything other than lawfully—but specifically and expressly on multiple occasions reminds his followers not to instigate violence. In the context in which ICE had recently murdered two different Twin Cities citizen activists peacefully engaged in protest and non-violent resistance, Mr. Wagner hardly seemed to be the problem here. (Meanwhile, Detroit local news has covered J.S.'s own activities, including a video showing him standing with armed government agents while yelling in a megaphone at Minneapolis protestors, "all you liberal commie ******* keep your hands to yourself or you are going to get hurt today alright.. . .We executed one of you yesterday," he said, referring to Renee Good.)[2] Mr. Wagner's online postings do not establish a danger to the community. The danger to the community exists because of the government activities Mr. Wagner is protesting. Mr. Wagner's postings are lawful protests of such egregious violence, harassment and turmoil caused by government agents to the Minneapolis-St. Paul community.

As to evidence of the risk of nonappearance, the magistrate made several faulty assumptions. First, that Mr. Wagner lacked job security and access to stable housing. Admittedly, not much was presented by the defense at the hearing to counter that

---

[2] Again, the news article cited is available for the court's review, but is not submitted here due to its identification of the alleged victim J.S.

assertion by the government; however, neither local Pretrial Services nor Mr. Wagner's federal defender had been given any time at all to research and investigate migitating information.  At a *de novo* hearing before this Court, the defense will present evidence that Mr. Wagner indeed has access to stable housing—his mother and stepfather's home in Eden Prairie, a suburb of the Twin Cities.  Mr. Wagner indeed has job offers related to his carpentry skills, is open to applying for other work as required by the court, and can be supported financially in the meantime by his parents.  And his commitment to attending future court proceedings in Detroit will be confirmed by his mother, who will drive to Detroit for this hearing and will commit to driving her son to each and every hearing as required afterwards.  She is within a couple months of retirement and has enough vacation days accrued that even before retirement, she can take the requisite time off to make the trips.  She has also volunteered to take on the role of Third Party Custodian if this is deemed necessary by this court.  Full contact details for Mr. Wagner's mother will be provided to Detroit Pretrial Services well in advance of a hearing to facilitate confirmation of details, and even, ideally, to facilitate a home visit check by Pretrial Services personnel in Minnesota.

Finally, the magistrate failed to adequately explain why there were not appropriate conditions that could reasonably assure both public safety and Mr. Wagner's appearance at court.  Although not necessary, Mr. Wagner is amenable to the following conditions that should address any possible concern by the government:

1) A condition prohibiting him, during the pendency of the case, from posting on social media;

2) A condition prohibiting him from any direct, indirect, or third-party contact with J.S. or his family;

3) A condition barring Mr. Wagner from participating in, organizing, or encouraging protest or other activist activities related to ICE or any other federal agency;

4) A condition barring Mr. Wagner from entering the city limits of Minneapolis or St. Paul, with appropriate exceptions for travel or medical care or other reasons designated by the court, without permission of his pretrial services officer;

5) A condition that Mr. Wagner not possess, and not reside in a place containing, any firearms;

6) A condition to wear an ankle monitor; and

7) A condition to designate his mother as Third Party Custodian.

This is not an exhaustive list of conditions that could be set and that Mr. Wagner would agree to follow; the defense is open to discussion of other conditions as well.

For the reasons stated above, the defense requests that a hearing be scheduled in regard to this matter as soon as practicable.

Respectfully submitted,

          **FEDERAL COMMUNITY DEFENDER**
          **EASTERN DISTRICT OF MICHIGAN**
          Attorneys for Defendant
          By:
                <u>s/Jean Pierre Nogues</u>
                Jean Pierre Nogues
                Assistant Federal Defender
          613 Abbott Street, Suite 500
          Detroit, Michigan 48226
          (313) 967-5840
          E-mail:  jp_nogues@fd.org

Dated:  March 6, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       CR. NO. 26-20059

v.                                    HON. DENISE PAGE HOOD

KYLE WAGNER,

        Defendant.
_____/

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to opposing counsel.

                                                 Respectfully submitted,

                                                 **FEDERAL COMMUNITY DEFENDER**
                                                 **EASTERN DISTRICT OF MICHIGAN**
                                                 Attorneys for Defendant
                                                 By:
                                                        <u>s/Jean Pierre Nogues</u>
                                                        Jean Pierre Nogues
                                                        Assistant Federal Defender
                                                 613 Abbott Street, Suite 500
                                               Detroit, Michigan 48226
                                               (313) 967-5840
                                               E-mail:  jp_nogues@fd.org

Dated:  March 6, 2026