UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,               CR. NO. 26-20059

v.                               HON. DENISE PAGE HOOD

KYLE WAGNER,

          Defendant.

_____/

## **PRETRIAL MOTIONS ON BEHALF OF DEFENDANT KYLE WAGNER**

This Court ordered the parties to file pretrial motions no later than May 15, 2026. The defense submitted a set of motions on May 15. (*See* ECF No. 31.) However, the original filing did not indicate the Government's position on the defense motions. The parties subsequently agreed that the defense would withdraw the original motions (*see* ECF No. 32) and resubmit them to indicate the Government's position.

Although the defense assumes the Court will provide further guidance to the parties as to submission of pretrial notices, witness lists, proposed jury instructions, and additional motions *in limine*, this filing puts forth five pretrial motions in anticipation of a July 28, 2026 trial date:

1. Motion *in limine* to preclude use of term and introduction of evidence and testimony regarding "Antifa";
2. Motion in limine to preclude use of term and introduction of evidence and testimony regarding "Iron Front";
3. Motion in limine to preclude use of term and introduction of evidence and testimony regarding "Satanism";

1

4. Motion in limine to preclude recordings of and testimony regarding Defendant's Arrest, Transport, Booking, and Processing on February 5, 2026; and

5. Motion for Defendant to Appear at Trial Without Restraints or Jail-Issued Clothing.

The Government **concurs** with Motions 2, 3, and 5.  The Government **does not concur** with Motions 1 and 4.

## 1.  MOTION *IN LIMINE* TO PRECLUDE USE OF TERM AND INTRODUCTION OF EVIDENCE AND TESTIMONY REGARDING "ANTIFA"

Kyle Wagner, by undersigned counsel, and pursuant to Federal Rules of Evidence 401, 402, and 403, as well as the First Amendment rights to speech and association, respectfully moves this Court to preclude references to or testimony regarding Mr. Wagner as a member of "Antifa" –a loosely connected political protest movement in the United States opposed to fascism and other forms of extreme right-wing ideology – because the admission of such testimony would have no probative value and would risk the jury finding guilt merely by association. This is especially true in light of an Executive Order issued on September 22, 2025, that designated "Antifa" as a domestic terrorist organization. The Government does not concur.

This criminal prosecution is not about Mr. Wagner's anti-fascist political beliefs but instead whether, on or about January 29, 2026, he used the internet to knowingly transmitted a true threat online to J.S., and whether he used the Internet and Instagram to engage in a course of conduct that caused, attempted to cause, and would reasonably

be expected to cause substantial emotional stress to J.S.  The Government has included references to Mr. Wagner's social media postings in which he self-identifies with the "Antifa" ideology in numerous filings before this court, despite the fact that those postings are entirely immaterial to a factual determination of whether he is guilty of the charged offenses.  Accordingly, the court should preclude the government from referring to Mr. Wagner at trial as a member of "Antifa", soliciting trial testimony about the same, or introducing social media postings by Mr. Wagner unrelated to his communications with and social media postings directed at J.S.

### I.       Background

In the affidavit in support of the criminal complaint, the government alleges that Mr. Wagner is "a self-identified Antifa member" and refers to multiple social media posts made by Mr. Wagner that the government characterizes as "show[ing] escalating threats directed against federal law enforcement, including ICE agents" and his "involvement in a conspiracy to assault, impede, resist or injure federal law enforcement officers and injure their property to molest, hinder, or impede their ability to discharge their official duties." (ECF No. 1, Pg.ID 2-4.)  Mr. Wagner is not charged with threatening ICE agents, nor is he charged as part of a conspiracy to assault or interfere with federal law enforcement.  Rather, it appears that the criminal complaint references these uncharged allegations to provide context on why Homeland Security

Investigations chose to review Mr. Wagner's historical social media posts on Facebook and Instagram.  (*Id.*, 5.)

According to the complaint, Mr. Wagner's Facebook account was called "Kyle Wagner", and he also had two Instagram accounts called "@kaos.follows" and "@antifa.kaos." (*Id.*, 3.)  As has been previously discussed by the defense in numerous filings relating to Mr. Wagner's bond status, 22 pages of the complaint detail social media posts by Mr. Wagner in which Mr. Wagner frequently expresses his opposition to ICE operations in Minneapolis.  (*Id.*, 5-29.)  In several of these posts, Mr. Wagner states "I['m] Antifa"  (*id.*, 23, 25, 27, 29), uses the word "antifa" or "antifascist" (*id.*, 8, 28), or discusses or identifies with the Iron Front (*id.*, 8, 9, 13, 15, 28), a historical liberal paramilitary group who opposed the totalitarian Nazi regime in early 1930s Germany.

But only two of these posts relate to the charged alleged conduct in this case. First, a public post made by the @antifa.kaos" Instagram account purportedly "doxxed" J.S. by publishing what Wagner allegedly believed to be J.S.'s phone number, birth month and year, and the address of J.S.'s parents' house. (*Id.*, 3-4, 8.)  In that same textual post, Mr. Wagner allegedly threatened J.S. by saying, "we can all knock on strangers doors . . . See you soon kiddo – stay safe out there."  (*Id.*, 29.)  In a second Instagram posting by "@antifa.kaos" that same day, Mr. Wagner is seen "explain[ing] that he doxxed J.S.'s parents' address and J.S.'s phone number," and "then discuss[ing] fighting J.S. in a cage fight." (*Id.*, 29-30.)  Mr. Wagner doesn't mention or reference Antifa or the Iron Front in either of these posts.  (Although not mentioned in the

4

complaint, it is relevant for the purposes of this motion that, in the video, Mr. Wagner is wearing a sweatshirt that says, "I'M ANTIFA." Because the video was shot on the front-facing camera of Mr. Wagner's recording device, the phrase on the t-shirt appears backwards.)

In a subsequent filing opposing Mr. Wagner's release on bond, the government stated that Mr. Wagner is "a self-described Antifa member, Satanist, and 'crazy leftist'", and noted that "On September 22, 2025, the federal government designated Antifa a domestic terror organization." (ECF No. 21, Pg.ID 82.)  These assertions by the government are made in support of its argument that Mr. Wagner poses a danger to the community, in part, because of his supposed "ties to an extremist—here, domestic terrorist—organization." (*Id.*, 99.)  As part of that same argument, the Government claims Wagner has a "proclivity for threatening and advocating violence." (*Id.*)

## II.   Argument

The Court should preclude the government from referring to Mr. Wagner as a member of Antifa and from soliciting testimony from its witnesses that characterize him as such pursuant to Federal Rules of Evidence 401, 402, and 403 and the First Amendment to the United States Constitution.

Permitting the government to do so would be unfairly prejudicial under Rule 403, especially in light of the September 22, 2025 Executive Order, which designated anyone who is a member of ANTIFA as a terrorist:

Antifa is a militarist, anarchist enterprise that explicitly calls for the overthrow of the United States Government, law enforcement authorities, and our system of law. It uses illegal means to organize and execute a campaign of violence and terrorism nationwide to accomplish these goals. This campaign involves coordinated efforts to obstruct enforcement of Federal laws through armed standoffs with law enforcement, organized riots, violent assaults on Immigration and Customs Enforcement and other law enforcement officers, and routine doxing of and other threats against political figures and activists. Antifa recruits, trains, and radicalizes young Americans to engage in this violence and suppression of political activity, then employs elaborate means and mechanisms to shield the identities of its operatives, conceal its funding sources and operations in an effort to frustrate law enforcement, and recruit additional members. Individuals associated with and acting on behalf of Antifa further coordinate with other organizations and entities for the purpose of spreading, fomenting, and advancing political violence and suppressing lawful political speech. This organized effort designed to achieve policy objectives by coercion and intimidation is domestic terrorism.

*See* The White House, Designating ANTIFA as a Domestic Terrorist Organization, *available at* [https://www.whitehouse.gov/presidential-actions/2025/09/designating-antifa-as-a-domestic-terrorist-organization/](https://www.whitehouse.gov/presidential-actions/2025/09/designating-antifa-as-a-domestic-terrorist-organization/) (published Sept. 22, 2025) (last accessed May 14, 2026). On the same day as this executive order, the White House issued a release stating that "Antifa has a long history of terrorizing our communities" and that "Antifa's terror is part of the trend of Radical Left violence," citing the assassination of Charlie Kirk by a "Radical Left terrorist" among other proposed examples. *See* The White House, President Trump Isn't Backing Down from Crushing Radical Left Violence, *available at* [https://www.whitehouse.gov/articles/2025/09/president-trump-isnt-backing-down-from-crushing-radical-left-violence/](https://www.whitehouse.gov/articles/2025/09/president-trump-isnt-backing-down-from-crushing-radical-left-violence/) (published on Sept. 22, 2025) (last accessed May 14, 2026). Permitting the government to describe Mr. Wagner as a member of ANTIFA would

thus allow them to paint him as a "domestic terrorist" with a "proclivity for threatening and advocating violence"—a inadmissible propensity argument that is anyways overly prejudicial under Rule 403.

Furthermore, Mr. Wagner's self-identification with "Antifa" has nothing to do with whether he threatened or cyberstalked J.S.  It therefore irrelevant under Rule 401 and should be inadmissible under Rule 402.

Mr. Wagner is alleged to have threatened and cyberstalked J.S. after J.S. posted a video of himself knocking on the door of a Minnesota-based journalist who had written critically of ICE's actions in Minneapolis—effectively threatening and stalking the journalist himself.  Mr. Wagner's relevant affiliation in this case is his own residency in Minneapolis and his opposition to ICE actions there.  While individuals affiliated with "Antifa" tend to support left-wing political policies and oppose authoritarian government actions, so do millions of Americans unaffiliated with "Antifa."  One would assume that a person affiliated with "Antifa" would, like Mr. Wagner, also specifically oppose ICE's actions in Minneapolis.  But so did a majority of Americans at the time of the alleged offenses.  *See* YouGov, "What Americans think about immigration enforcement and the death of Alex Pretti," available at *https://yougov.com/en-us/articles/53972-what-americans-think-about-immigration-enforcement-and-the-death-of-alex-pretti* (published Jan. 28, 2026) (last accessed May 15, 2026).

Finally, the irrelevant nature of Mr. Wagner's statements regarding and affiliation with "Antifa" also raises Constitutional concerns. The First Amendment prohibits the

evidentiary use of a defendant's beliefs "when those beliefs have no bearing on the issue being tried." *Dawson v. Delaware*, 503 U.S. 159, 165 (1992). In *Dawson*, the Supreme Court was "left with the feeling that [evidence of the defendant's membership in the Aryan Brotherhood] was employed simply because the jury would find [the gang's] beliefs morally reprehensible." *Id.* at 167. Introducing such evidence at trial violates a defendant's First Amendment rights. *Id.* at 160.

The First Amendment issue raised in *Dawson* has most often come up in this district in the context of RICO conspiracy cases, where the government sought to introduce evidence of a defendant's song lyrics to establish a connection with a street gang that constituted the nexus of the alleged criminal enterprise. *See, e.g., United States v. Mills*, 367 F.Supp.3d 644, 669 (E.D. Mich. 2019) (Government's intended use of rap lyrics "entirely distinct from any incidental portrayal of Johnson as a morally reprehensible person; they bear on specific issues relevant in this case, i.e., charges of racketeering conspiracy and establishing a pattern of racketeering activity")(citing *United States v. Salameh*, 152 F.3d 88, 110, 112 (2d Cir. 1998) (upholding use of evidence of political speech or beliefs to prove the existence of a conspiracy); *United States v. Graham*, 293 F.Supp. 3d 732, 736-9 (E.D. Mich. 2017) (rap music videos admissible and not "merely abstract beliefs" where they described some defendants' actions as part of the RICO conspiracy and tied other defendants to that conspiracy via their participation in

the videos);  *United States v. Garnes*, 2015 WL 3574845 (E.D. Mich. June 5, 2015).[1]

Notably, Mr. Wagner is not charged as part of a conspiracy.  He is not charged under

RICO.  Nor is he alleged to have transmitted threats or engaged in cyberbullying against

J.S. in association because of any affiliation or affinity with "Antifa."

The Sixth Circuit's only decision touching on *Dawson* reversed the granting of

a habeas petition challenging a state homicide conviction, where evidence of a

defendant's gang affiliation supported the government's assertion that a defense witness

(and fellow gang member) was biased, and where gang affliation also "tended to make

Petitioner's presence at the scene of the shootings. . . more likely than it would have be

without the evidence." *Blackmon v. Booker*, 696 F.3d 536, 555 (6th Cir. 2012).  But that's

not the case here either.  There is no factual dispute in this case whether Mr. Wagner

created the social media postings in question.  Mr. Wagner's supposed affiliation with

"Antifa" does not make his responsibility for those postings any more likely.  *Cf.*

*Blackmon*, 696 F.3d at 555.

The factual dispute in this case is whether Mr. Wagner's social media postings

directed at J.S. constituted true threats or a pattern of harassment establishing

cyberstalking.  Permitting the government and/or its witnesses to refer to Mr. Wagner

---

[1] In *Garnes*, a pretrial motion *in limine* to exclude evidence of tattoos, song, lyrics and marijuana was "denied without prejudice. However, the Court will require the government to alert it prior to any introduction of the song lyrics at trial so that the court will be better able to determine the potential danger of unfair prejudice that may arise." *Id.* at *1.

as a member or associate of "Antifa" may imply that he shared the goals of the movement as characterized in the Trump Administration's Executive Order, i.e. "terror." This would undoubtedly impact the jury's factual determination about Mr. Wagner's intent towards J.S., and could lead the jury to make a conclusion that Mr. Wagner, based merely on his broader abstract political beliefs opposing authoritarianism, intended to "terrorize" J.S.

Other circuit courts who have addressed *Dawson* emphasize the potential for unfair prejudice. "The crucial question is whether the evidence at issue [is] used for permissible purposes or merely to show that [the defendant] was morally reprehensible due to his abstract beliefs." *United States v. Fell*, 531 F.3d 197, 229 (2d Cir. 2008) (internal citations omitted).[2]  The Fourth Circuit has likewise recognized that unfair prejudice damages a defendant by appealing to jurors' emotions. *See United States v. Mohr*, 318 F.3d 613, 619-20 (4th Cir. 2003). In a similar context, other courts have excluded evidence of gang affiliation that appears merely designed to establish guilt by association. *See United States v. McKay*, 431 F.3d 1085, 1093 (8th Cir. 2005) (holding evidence of gang affiliation or membership "is not admissible where it is meant merely to prejudice the

---

[2] In *Fell*, the government presented evidence to the jury during penalty phase of a capital murder trial that the defendant had satanic beliefs and tattoos, and that he wore a "Slayer" t-shirt while committing the murder. *Fell*, 531 F.3d at 230. "While evidence of the defendant's abstract moral beliefs may in some cases be constitutionally admissible to show motive, there must be stronger evidence of the connection than occurred here and it was a mistake for the prosecutor to offer the evidence. . . we are not persuaded by the relevance of this evidence." *Id.* (internal citations omitted).

10

defendant or prove his guilt by association with unsavory characters"); *United States v. Irvin*, 87 F.3d 860, 866 (7th Cir. 1996) (holding district court abused discretion by not excluding evidence under Rule 403 of gang affiliation that merely "increas[ed] the chance of guilt purely by association"); *United States v. Elkins*, 70 F.3d 81, 84 (10th Cir. 1995) (holding that evidence of gang membership was not admissible in firearms prosecution to impeach defense witness' testimony on grounds of bias).

A similar motion *in limine* was recently granted by a district court in the Eastern District of Virginia. *See* Order, *United States v. Stinson*, 25-cr-00209, Doc. 96, PgID. 686, (E.D. Va. Oct. 17, 2025). Stinson was accused of soliciting a person to assassinate President Trump, in violation of 18 U.S.C. § 373 (Solicitation of a Crime of Violence). *See* Sup. Ind., *id.*, Doc.45, Pg.ID 179. In the affidavit of the complaint, the government had alleged, as here, that the defendant was a "Self-Proclaimed Member of ANTIFA," and argued that "Antifa"-affiliated individuals "collectively act together or form groups that are known to 'engage in coordinated tactics (black-bloc) to impede law enforcement and to use violence to further their cause.'" *See* Mot., *id.*, Doc. 78, Pg.ID 454 (quoting from Comp., *id.*, Doc. 2, ¶ 6-7). However, there was no evidence produced by the government "that Stinson was an actual member of an organized ANTIFA chapter, local or national," nor was he alleged to have conspired with other "Antifa" members in committing the offense. *See* Mot., *id.*, Doc. 78, Pg.ID 454-5.

The Government argued, in opposition to the defense motion, that Stinson's affiliation was "direct evidence of his *mens rea*, an element for which the government

carries the burden of proof, and is therefore highly relevant and probative." *See* Gov't Resp., *id.*, Doc. 91, Pg.ID 572. The government argued that, because one of the elements of solicitation of a crime of violence is that the solicitation is "made under such conditions or within such context that the overture may be reasonably regarded as sincere," the defendant's solicitation would be "rendered meaningless without context." *See* Gov't Resp., *id.*, Doc. 91, Pg.ID 577.

> The defendant's belief that President Trump is a fascist, his repeated statements that he is "ANTIFA" and committed to fighting fascism, and his declaration that "Fascism always dies a violent death" is incredibly probative of the fourth element of the charged offense—that the defendant made his solicitations under circumstances that strongly corroborate his intent. . . Indeed, the defendant's decision to solicit the assassination of President Trump *entirely stems from his anti-fascist beliefs*. The two are inextricably linked. . . Barring the government from introducing evidence regarding the defendant's self-proclaimed associations with ANTIFA and his anti-fascist beliefs would leave the record entirely devoid of evidence of the defendant's motive, state of mind and mens rea—all of which directly and strongly support an element of the crime charged: his intent.

*See* Gov't Resp., *id.*, Doc. 91, Pg.ID 577-8 (emphasis in original).

It is notable, of course, that Mr. Wagner's alleged actions are distinguishable from Stinson's charges not only in that Wagner is not alleged to have threatened a political leader, but that he is alleged to have been responding to threats made by J.S. against a local journalist critically covering ICE operations in Minneapolis—actions, as pointed out above, that a majority of Americans also opposed, in the very city that Mr. Wagner called home. It would be incredulous for the government to even suggest that Mr. Wagner's actions "entirely stem[] from his anti-facist beliefs."

12

But even so, the reference to the affiliation was inappropriate in Stinson's case. Replied the defense, "The government seeks to brand Mr. Stinson with a label that the current administration has explicitly designated as "domestic terrorism" – not because this label proves intent, but because it is inflammatory and politically divisive." *See* Def. Rep, *id.*, Doc. 94, Pg.ID 676.  Futhermore, the government's argument in *Stinson*

> conflates motive (why Mr. Stinson might want President Trump dead) with intent (whether he seriously proposed that another person assassinate President Trump).  While Mr. Stinson's antifascist posts and purported affiliation with ANTIFA demonstrate political opposition against President Trump, none of this evidence tends to prove that he seriously intended anyone to act on his offhand post to "Take the shot. We'll deal with the fallout."

*See* Def. Rep, *id.*, Doc. 94, Pg.ID 677.  The district court apparently agreed, and granted the motion in limine.  *See* Order, *id.*, Doc. 96, PgID. 686, (E.D. Va. Oct. 17, 2025)

Here, Mr. Wagner is accused of, at worst, an *implied* threat against J.S. by saying "we can all knock on strangers (sic) doors. . . See you soon kiddo – stay safe out here." (ECF No. 10, Pg. 50). His antifascist posts and purported affiliation with "Antifa" do nothing to tend to prove he seriously intended to cause J.S. fear of imminent harm or substantial emotional distress.  References to Mr. Wagner's "affiliation" with Antifa should be precluded as in *Stinson*.  But this Court should go even further in precluding reference to any of Mr. Wagner's social media posts that express his anti-fascist views but do not relate specifically to J.S., given that Mr. Wagner's alleged motivation for his interactions with J.S.—J.S.'s antagonism of Minneapolis residents opposed to or critical of ICE's operations there—has nothing to do with Mr. Wagner's broader antifascist

13

political views.   "Antifa" is not relevant to either motive *or* intent in this case. Introduction of such evidence would violate Mr. Wagner's First Amendment rights per *Dawson*, 503 U.S. 159, and is inadmissible anyway under Rules 401, 402, and 403.  This Court should preclude any such references.

## 2.  MOTION *IN LIMINE* TO PRECLUDE USE OF TERM AND INTRODUCTION OF EVIDENCE AND TESTIMONY REGARDING "IRON FRONT"

Kyle Wagner, by undersigned counsel, and pursuant to Federal Rules of Evidence 401, 402, and 403, as well as the First Amendment rights to speech and association, respectfully moves this Court to preclude references to or testimony regarding Mr. Wagner as a self-identified member of the "Iron Front"– a historical liberal paramilitary group who opposed the totalitarian Nazi regime in early 1930s Germany—because the admission of such testimony would have no probative value and would risk the jury finding guilt merely by association.  The Government concurs.

This Motion adopts the Background of the prior Motion *in limine* to Exclude, as well as the arguments as to why Mr. Wagner's political philosophy and associations are protected by the First Amendment, and are irrelevant to and more prejudicial than probative of the question of whether he intended to threaten or cyberstalk J.S. Introduction of such evidence would violate Mr. Wagner's First Amendment rights per

14

*Dawson*, 503 U.S. 159, and is inadmissible anyway under Rules 401, 402, and 403.  This Court should preclude any such references.

### 3.  MOTION *IN LIMINE* TO PRECLUDE USE OF TERM AND INTRODUCTION OF EVIDENCE AND TESTIMONY REGARDING "SATANISM"

Kyle Wagner, by undersigned counsel, and pursuant to Federal Rules of Evidence 401, 402, and 403, as well as the First Amendment rights to speech and association, respectfully moves this Court to preclude references to or testimony regarding Mr. Wagner as a self-identified "Satanist", because the admission of such testimony would have no probative value and would risk the jury finding guilt merely by association. The Government concurs.

This Motion adopts the Background of the prior Motions *in limine* to Exclude, as well as the arguments as to why Mr. Wagner's political philosophy and associations are protected by the First Amendment, and are irrelevant to and more prejudicial than probative of the question of whether he intended to threaten or cyberstalk J.S. Introduction of such evidence would violate Mr. Wagner's First Amendment rights per *Dawson*, 503 U.S. 159, and is inadmissible anyway under Rules 401, 402, 403 and 404. This Court should preclude any such references.

15

### 4.  MOTION *IN LIMINE* TO PRECLUDE RECORDINGS OF AND TESTIMONY REGARDING MR. WAGNER'S ARREST, TRANSPORT, BOOKING AND PROCESSING ON FEBRUARY 5, 2026

The government provided as discovery a set of reports, photos, and video- and audio-recordings related to Mr. Wagner's arrest on February 5, 2026.  Mr. Wagner was arrested at his residence in the early morning as part of a raid.  He expresses anger and belligerence towards the officers involved in the raid, arrest, and subsequent transport, booking and processing, as he expressed his belief that he was being targeted by political enemies and was being arrested without probable cause of a crime.

Presentation of any of this evidence, which the government would no doubt characterize as resisting arrest and broad belligerence towards law enforcement and the federal government, is irrelevant under Rule 401 of the Federal Rules of Evidence, because it has no tendency to make more or less probable any facts consequent to determination of whether Mr. Wagner is guilty of, on or about January 29, 2026, threatening or cyberstalking J.S.  Because it is not relevant under Rule 401, it is inadmissible under Rule 402. The Government does not concur.

In the alternative, this evidence should be excluded under Rule 403, because any probative value is far outweighed by the danger of unfair prejudice, confusing the issues, wasting time, and needlessly presenting cumulative evidence.  Seeing Mr. Wagner react to law enforcement in anger and belligerence on February 5, 2026—again, acts and reactions for which he is not even charged with a crime—risks causing the jury to form

16

a negative impression of Mr. Wagner that could severely prejudice them against him while considering the ultimate factual issue of whether he threatened or cyberstalked J.S.—who is not a government employee or law enforcement officer—on January 29, 2026. The defense anticipates that the government may argue that the footage is probative because it shows knowledge of guilt. It does nothing of the sort; Mr. Wagner is resistant because he believes he is being unlawfully arrested. But the probative value of Mr. Wagner's reason for resisting—whether supporting innocence or guilt—gets lost in the chaotic drama of the footage. It thus presents an undue risk that a jury might base their decision on the ultimate material facts of the case on an improper basis. It would also greatly confuse the issue for the jury regarding what offense Mr. Wagner was really on trial for—opposing ICE operations in Minneapolis and generally opposing fascist government—or making threats online against another social influencer and activist. Finally, various recordings taken from different devices depict the same moments; admitting them would be needlessly cumulative and would waste time.

Additionally, multiple officers present during the search of Mr. Wagner's residence, and his arrest, transport, booking, and processing, all wrote narrative reports regarding the circumstances of the arrest and Mr. Wagner's behavior. However, none of them were otherwise involved in the investigation in this case. These officers thus have nothing to offer in trial testimony that would be relevant, more probative than

prejudicial, or consist of permissible bad-acts evidence.  Thus, their testimonies should be excluded from trial for the same reasons as the challenged recordings.

To the extent any officers present during Mr. Wagner's arrest, transport, booking and processing were involved in the prior or subsequent investigation into Mr. Wagner's online activities, this court should limit their testimony to those investigations.

## 5.  MOTION FOR DEFENDANT TO APPEAR AT TRIAL WITHOUT RESTRAINTS OR JAIL-ISSUED CLOTHING

Mr. Wagner respectfully requests that the Court allow him to appear before the jury without physical restraints and in civilian attire. The Government concurs.

The Constitution requires that a criminal defendant be tried free of inherently prejudicial conditions that undermine the presumption of innocence. As the Supreme Court has recognized, visible restraints on a defendant "undermine[] the presumption of innocence and the related fairness of the factfinding process." *Deck v. Missouri*, 544 U.S. 622, 630 (2005). Such restraints should not be imposed absent "an essential state interest — such as the interest in courtroom security — specific to the defendant on trial." *Id.* at 624.

In *Deck*, the Court held that the routine use of visible restraints at trial is unconstitutional unless justified by an essential state interest, such as preventing escape, ensuring courtroom security, or maintaining order, and supported by specific, on-the-record findings by the trial court. *Id.* at 629 ("[T]he Fifth and Fourteenth Amendments

18

prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial.").

Likewise, in *Estelle v. Williams*, 425 U.S. 501 (1976), the Court concluded that compelling a defendant to appear before the jury in jail attire violates due process. The Court explained:

> The constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. ... Compelling a defendant to stand trial in jail clothing furthers no essential state policy and serves only to brand him in the eyes of the jurors with an unmistakable mark of guilt.

*Id.* at 504–05.

Both *Deck* and *Estelle* underscore a fundamental principle: the state may not impose conditions that erode the presumption of innocence unless absolutely necessary, and any such necessity must be established with specificity on the record.

In this case, there has been no indication of any misconduct by Mr. Wagner that would justify visible restraints or jail attire at trial. He has not engaged in any disruptive behavior, posed a security threat, or otherwise provided a basis for departing from constitutional norms. Absent such findings, the routine use of shackles or jail-issued clothing would impermissibly erode Mr. Wagner's constitutional right to a fair trial.

Further, even aside from the constitutional infirmities, the principles of Federal Rule of Evidence 403 strongly support exclusion of such prejudicial conditions. Visible restraints and jail attire create an unacceptable risk of unfair prejudice, which

19

substantially outweighs any arguable probative value in the absence of genuine security concerns.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully requests that this Court grant the above pretrial motions or, in the alternative, hold hearings as appropriate on the issues raised.

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER**
**EASTERN DISTRICT OF MICHIGAN**


s/Jean Pierre Nogues
JEAN PIERRE NOGUES
Attorney for Defendant
613 Abbott Street, Suite 500
Detroit, Michigan 48226
(313) 967-5832
E-mail:  Jean_Nogues@fd.org

Dated:  May 28, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

               Plaintiff,               CR. NO. 26-20059

v.                                HON. DENISE PAGE HOOD

KYLE WAGNER,

               Defendant.

_____/

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send any required notification to opposing counsel.

                              **FEDERAL COMMUNITY DEFENDER**
                              **EASTERN DISTRICT OF MICHIGAN**


                              <u>s/Jean Pierre Nogues</u>
                              JEAN PIERRE NOGUES
                              Attorney for Defendant
                              613 Abbott Street, Suite 500
                              Detroit, Michigan 48226
                              (313) 967-5832
                              E-mail:  Jean_Nogues@fd.org

Dated:  May 28, 2026