UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

KYLE WAGNER,

Defendant.

Case No. 26-cr-20059

Hon. Denise Page Hood

---

**MOTION TO SUPPRESS**

---

Kyle Wagner, through counsel, moves under Federal Rule of Criminal Procedure Rule 12(b)(3)(C) and the Fourth Amendment to suppress evidence obtained through the execution of an unconstitutional search warrant at XX E Franklin Ave Apt XXX. The affidavit attached to the warrant did not state facts that linked Wagner's apartment to evidence of a crime. The warrant thus lacked probable cause, and the evidence seized pursuant to the warrant should be suppressed. Per Local Rule 7.1, opposing counsel was consulted and does not concur in the motion.

WHEREFORE, Kyle Wagner respectfully requests the Court suppress any and all evidence seized during the search warrant execution at XX E Franklin Ave Apt XXX.

Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/Riyah Basha
RIYAH BASHA
JEAN PIERRE NOGUES
ELIZABETH YOUNG
Attorneys for Kyle Wagner
613 Abbott St., Ste. 500
Detroit, MI 48226
Phone: 313-556-3021
Email: riyah_basha@fd.org

Dated: November 16, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

KYLE WAGNER,

Defendant.

Case No. 26-cr-20059

Hon. Denise Page Hood

---

**BRIEF IN SUPPORT OF MOTION TO SUPPRESS**

---

The government sought to search Kyle Wagner's home based on his political speech on social media. It accordingly obtained a search warrant with an affidavit consisting that largely relied on Wagner's social media posts. Those posts, however, were not meaningfully linked to Wagner's residence in any way; the affidavit contains few facts to conclude that a phone, computer, or other electronic device would be stored at his home.

The affidavit submitted in support of a warrant to search XX E Franklin Ave Apt XXX failed to establish probable cause that evidence of a crime would be found there. The evidence seized must therefore be suppressed pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fourth Amendment.

## FACTUAL BACKGROUND

Mr. Wagner incorporates by reference his overview of Operation Metro Surge and his political opposition to the actions of Immigrations and Customs Enforcement (ICE) officers in his city. *Appellee Br.*, *United States v. Wagner*, No. 26-1294 (6th Cir. Apr. 23, 2026) (ECF No. 13, PageID.4-10.). In the wake of Metro Surge, Wagner took to the streets, marching with other Minneapolis residents and distributing protective masks and shields to other protesters. He also took to social media to denounce ICE operations and to encourage others to take a political stand as well. His posts garnered views and comments from around the world.

Federal agents also took notice of Wagner's online criticism. They began to catalog his posts on social media on January to March of 2026, building a case to criminalize his posts and messages online. In furtherance of this investigation, Homeland Security Investigations (HSI) Agent Rudy Lara sought a search warrant for Wagner's apartment, located at XX E. Franklin Ave Apt XXX. Lara stated that there was reason to believe Wagner's residence contained evidence of various offenses including cyberstalking, in violation of 18 U.S.C. § 2261A(2); threats made in interstate communications, 18 U.S.C. § 875(c); and conspiracy to assault, resist or impede officers, 18 U.S.C. §§ 371, 111.[1]

[1] Lara's affidavit states three additional Target Offenses: conspiracy to impede or injure a federal officer, 18 U.S.C. § 372; influencing, impeding, or retaliating against a federal official, 18 U.S.C. § 115(a); and solicitation to commit a crime of violence, 18 U.S.C. § 373.

In the affidavit attached to the warrant, Lara summarizes Wagner's social media activity and the investigation by ICE and HSI into his posts. (*See* Ex. A, Aff.)[2] Lara states that he believes Wagner used a "phone or electronic device to record videos and post to his social media." (*Id.*, ¶ 6.) Thus, Lara states, there was probable cause to search Wagner's home for evidence of the Target Offenses – namely, "his phone, computer, and other electronic devices." (*Id.* ¶ 12.) Lara also sought to search "a cell phone assigned the call number (952) 388-8775." (*Id.* ¶ 1.)

The affidavit consists of twenty pages quoting Wagner's social media posts. This is the entirety of the affidavit's Probable Cause section. (*See id.*, ¶ 10.) Next, Lara summarizes online and physical surveillance that connected Wagner to XX E. Franklin Ave. (*Id.*, ¶¶ 13-15.) The rest of the affidavit, some 16 pages, contain Lara's general observations about electronic evidence based on her "training and experience." (*Id.*, §§ 16-24.)

Magistrate Judge David Schulz in the District of Minnesota issued the warrant on February 3, 2026.

## LEGAL STANDARD

The Fourth Amendment protects against unreasonable government intrusions into private property. *Riley v. California*, 573 U.S. 373, 381–82 (2014).

[2] Magistrate Judge Schulz granted the government's motion to seal the search warrant and accompanying documents until February 3, 2027. The defense will therefore move for leave to file the search warrant and accompanying affidavit as Exhibit A under seal.

Most of the time, reasonableness boils down to a simple command: "get a warrant." *Id.* at 403; *see also id.* at 382 (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)). Not every warrant is reasonable, though. The text of the Amendment emphasizes that "no warrant shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This requires a nexus between the place to be searched, the crime alleged, and the evidence sought. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).

The nexus requirement demands facts that are particular to the place to be searched. "[S]uspicions, beliefs, or conclusions" are not enough "without [ ] some underlying factual circumstances regarding veracity, reliability, and basis of knowledge . . ." *United States v. West*, 520 F.3d 604, 610 (6th Cir. 2008). In the same way, generalizations about the usual behavior of a criminal are also not enough on their own for nexus. *United States v. Sanders*, 106 F.4th 455, 466 (6th Cir. 2024); *see United States v. Brown*, 828 F.3d 375, 383–84 (6th Cir. 2016) ("[I]f the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, . . . it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer"). Also, an officer's "training and experience, without more, is not a fact to be added to the quantum of evidence to determine if probable cause exists, but rather a 'lens' through which courts view

the quantum of evidence observed at the scene." 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.2(c) (6th ed. 2020) (quoting *Pennsylvania v. Dunlap*, 941 A.2d 671, 674 (Pa. 2007))

District courts reviewing the sufficiency of a warrant application must ensure the magistrate judge had a "substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Review of the evidence provided in support of probable cause is limited to the four corners of the affidavit. *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016).

Even giving due deference to the issuing judge, there are many circumstances when suppression is warranted. Suppression is the remedy, for example, if an "affidavit is devoid of facts" connecting a suspect's home to alleged criminal activity. *Brown*, 828 F.3d at 385–86. Suppression is likewise appropriate if an affidavit includes merely "conclusory statement[s]" about why evidence of a crime may exist in a particular location. *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017). A warrant is also invalid if "the magistrate's probable-cause determination reflects an improper analysis of the totality of circumstances." *United States v. Raymonda,* 780 F.3d 105, 113 (2d Cir. 2015).

**ANALYSIS**

The warrant here failed to establish probable cause that Wagner's home would contain evidence of any crime. Agent Lara sought to seize and search any "phone,

computer, or other electronic devices" found in the apartment for evidence of Wagner's online conduct. But the affidavit does not contain facts to conclude that any such device would be in his apartment at the time of the search.

An affidavit must show a likelihood that "the items will be found in the place to be searched" to establish probable cause. *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 n.6 (1978)). To sanction a home search for electronic devices in particular, courts agree that the affidavit should establish facts showing: "(1) that the individual possesses the devices, (2) that the devices are in the individual's residence, and (3) that the devices contain evidence of the suspected offense." *Armendariz v. City of Colorado Springs*, 169 F.4th 1036, 1053 (10th Cir. 2026) (quoting *Griffith*, 867 F.3d at 1273). This affidavit plainly fails on the second requirement.

The affidavit states no particular facts, beyond the fact that Wagner used applications that can be accessed from a cellphone, to support that his phone would be in his home. Most people do not keep their cellphones in a specific place, but rather "on their person," *Riley v. California*, 573 U.S. 373, 395 (2014). In fact, "nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower." *Id.* (citing Harris Interactive, 2013 Mobile Consumer Habits Study (June 2013)); *see Carpenter v. United States*, 585 U.S. 296, 311 (2018) (remarking that

most Americans "compulsively carry cell phones with them all the time."). In this way, the typical inference that people keep evidence at home does not fit a cell phone. Drugs and firearms are typically stored somewhere. A cell phone is onhand. Yet here, for all of Agent Lara's "training and experience" with cell phone users, he fails to recognize this basic fact of modern life. The social media posts in the affidavit even depict Wagner in different settings, at times on the street. (*See, e.g.,* Ex. A, ¶ 10j.) No facts tie his cell phone to a particular place.

The affidavit also seeks the search and seizure of a phone assigned the number (952) 388-8755. (Ex. A, ¶ 1.) Yet the affidavit never connects that particular phone number to a specific communication sent by Wagner. *Cf. United States v. Hawkins*, 426 F.Supp.3d 447, 449 (E.D. Mich. 2019) (allowing search of cell phone linked to number identified by confidential informant).

The D.C. Circuit's opinion in *Griffith* is instructive. 867 F.3d at 1272-74. There, officers sought to a suspect's apartment for a cell phone. The court suppressed in part because there was no evidence that he owned a cell phone, nor that the phone would be located in the home. *Id.* The court acknowledged that "most people own a cell phone." In that light, officers cannot search a home based on the fact that an occupant uses a phone. Rather, the warrant should incorporate a second-order assumption: "that the person (and his cell phone) would be home." *Id.* at 1273. Here, as in *Griffith*, the warrant authorized a search of every corner of Wagner's home

"without regard to his presence." *Id.* Given the fact that most people carry their phone on their person, one might think Agent Lara was applying for a warrant for Wagner's arrest. *See id.* Not a "full-scale search of his entire home." *Id.*

The affidavit also fails to state facts to support that Wagner owns a computer or specifically used one in connection with a crime. *Cf. Peffer v. Stephens*, 880 F.3d 256, 273 (6th Cir. 2018) (legitimizing search of Peffer's home because an "averment [in affidavit] that he used one in the commission of a crime is sufficient to create the presumption that it would be found at his residence."); *United States v. Sueiro*, 59 F.4th 132, 140 (4th Cir. 2023) (affidavit contained information showing that defendant owned a computer that he kept in his bedroom). It's true that people access platforms like Instagram and Facebook through applications or through the Internet. But here, the affidavit does not state any facts to infer that Wagner posted from a particular device other than a cell phone.

The good faith exception cannot cure this constitutional violation. Officers relying on bad warrants do not get the benefit of the doubt when the warrant is obviously deficient. *United States v. Reed*, 993 F.3d 441, 452 (6th Cir. 2021). Obvious deficiencies fall into four categories. *United States v. Leon*, 468 U.S. 897, 923 (1984). The relevant category here is when a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923. Such warrants are considered "bare bones" and lack even a

"minimally sufficient nexus" between the alleged crime and the place searched. *Carpenter*, 360 F.3d at 595.

Here, the warrant failed to create a sufficient factual link between Wagner's home and evidence of his online activity. A demonstration of probable cause depended on whether a device used by Wagner would be in the home. There were *no* specific facts in the affidavit to that end. *See Griffith*, 867 F.3d at 1278 (declining to apply good-faith exception. "Although the good-faith standard is less demanding than the standard for probable cause, the affidavit must still draw some plausible connection to the residence." *United States v. Brown,* 828 F.3d 375, 382 (6th Cir. 2016). This affidavit did not. That too, the nexus requirement takes on more importance inside the home. Physical entry into the home "is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980).

The government expected that a pile-on of social media posts would allow them to access every nook and cranny of Wagner's home. That falls far short of the standard of probable cause required by the Fourth Amendment. The Court should find the search warrant was deficient and violated Mr. Wagner's Fourth Amendment rights. Any evidence obtained through the warrants must be suppressed as fruits of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963).

## CONCLUSION

For the foregoing reasons, Kyle Wagner requests this Court suppress any evidence seized as a result of the invalid search warrant.

Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/Riyah Basha
RIYAH BASHA
ELIZABETH YOUNG
JEAN PIERRE NOGUES
Attorneys for Kyle Wagner
613 Abbott St., Ste. 500
Detroit, MI 48226
Phone: 313-556-3021
Email: riyah_basha@fd.org

Dated: November 16, 2026